1   Michael P. West, Esq., SBN 172478
    Ashley A. Escudero, Esq., SBN 250473
2   **MORRIS POLICH & PURDY LLP**
    600 W. Broadway, Suite 500
3   San Diego, California 92101
    Telephone:  (619) 557-0404
4   Facsimile:   (619) 557-0460
    MWest@mpplaw.com
5   AEscudero@mpplaw.com

6   Attorneys for Defendants,
    BROOKDALE LIVING COMMUNITIES, INC. and
7   EMERICARE INC.

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  | DENISE SHULER, an individual and as | Case No. |
    Successor in Interest on behalf of
12  FRANCES ANN RIEDEL, deceased;

13                Plaintiff,              **NOTICE OF REMOVAL OF ACTION**
                                          **UNDER 28 U.S.C. § 1441(B)**
14         v.                             **DIVERSITY**

15                                        [Re: Los Angeles County Superior Court
16  EMERICARE Inc., a Delaware            Case No.: BC651947]
    Corporation doing business as
17  BROOKDALE SAN DIMAS;                  Complaint Filed:   February 24, 2017
    BROOKDALE LIVING                      Trial Date:  None
18  COMMUNITIES, INC., a Delaware
    Corporation; and Does 1 -60;
19
                  Defendants.
20

21  MICHAEL STONE, an individual; and
22  RANI RIEDEL, an individual,

23                Nominal Defendants

24

25       Defendants,  Brookdale  Living  Communities,  Inc.  and  EmeriCare  Inc.

26  (collectively referred to as "defendants") hereby give notice of removal of the above-

27  entitled action from the Superior Court of California, County of Los Angeles, Case No.

28

---

NOTICE OF REMOVAL

BC651947, to the United States District Court for the Central District of California, and state the following:

1.     On February 24, 2017, plaintiff Denise Shuler, individually and as Successor in Interest on behalf of Frances Ann Riedel ("plaintiff") commenced a civil action against defendants in the Superior Court of the State of California, County of Los Angeles, by filing an action entitled *Denise Shuler, an individual and as Successor in Interest on behalf of Frances Ann Riedel, deceased, v. Emericare Inc., a Delaware Corporation doing business as Brookdale San Dimas; Brookdale Living Communities, Inc. a Delaware Corporation; and Does 1-60,* Case No. BC651947.

2.     On March 9, 2017, copies of the Summons and Complaint and case related documents in the above-entitled action were served upon defendant EmeriCare Inc., through its agent for service of process, Corporation Service Company.

3.     Attached hereto as Exhibit "A" are true and correct copies of the Summons, Complaint and exhibits thereto, Code of Civil Procedure § 377.32 Declaration of Denise Shuler, Statement of Damages by Denise Shuler, an individual; Civil Case Cover Sheet and form attachments thereto; Notice of Department Assignment and Case Management Conference; form Stipulation – Discovery Resolution; form Stipulation – Early Organizational Meeting; form Informal Discovery Conference; form Stipulation and Order – Motions in Limine;  Statement of Damages by Denise Shuler, as Successor in Interest, constituting all of the papers and pleadings served upon EmeriCare Inc. through Corporation Service Company.

4.     Attached hereto as Exhibit "B" is a true and correct copy of the Service of Process Transmittal establishing proof of service of the Summons and Complaint relating to EmeriCare Inc., on March 9, 2017.

5.     Defendant Brookdale Living Communities, Inc. has not been served with the Summons and Complaint, and hereby brings the instant Notice of Removal and/or otherwise joins in the Notice of Removal to this Court of the state court action described in this Notice of Removal.

## JURSIDICTIONAL BASIS FOR REMOVAL

6.    This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332.  This action may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. § 1441(b) because: (1) there is the requisite diversity of citizenship as plaintiff and defendants are not citizens of the same state; and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

### A.    Diversity of Citizenship

7.    Plaintiff is a citizen of the State of California.  Plaintiff Frances Ann Riedel (deceased) was a citizen of the State of California.

8.    Defendant Brookdale Living Communities, Inc. was, at the time of the commencement of this action, and still is, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Tennessee.

9.    For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of both the state of its incorporation and of the state where it has its principal place of business.  (28 U.S.C. § 1332(c)(1).)  "Principal place of business" means the place where a corporation's board and high level officers direct, control and coordinate its activities, which is often referred to as the corporation's "nerve center." (*Hertz Corp. v. Friend* (2010) 559 U.S. 77, 80-81, 92-93, 130 S.Ct. 1181, 1186, 1192 [rejecting all prior tests in favor of "nerve center" test)].  The "nerve center" is at the corporate headquarters, "provided that the headquarters is the actual center of direction, control, and coordination … and not simply an office where the corporation holds its board meetings." (*Id.,* 559 U.S. at 93, 130 S.Ct. at 1192.)  Corporations are not "citizens" of every state in which they do business, or in which they have their plants and offices. A corporation's "nerve center" is its only "principal place of business" for diversity and removal jurisdiction purposes.  (See, *Hertz Corp. v. Friend, supra,* 559 U.S. at 96, 130 S.Ct. at 1194 ["For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct

those activities just across the river in New York, the 'principal place of business' is New York"].)

10.     Accordingly, pursuant to 28 U.S.C. § 1332(c)(1), and the rules set forth in *Hertz Corp. v. Friend, supra,* defendant Brookdale Living Communities, Inc., is a citizen of Delaware and Tennessee.

11.     Defendant EmeriCare Inc. was, at the time of the commencement of this action, and still is, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Tennessee.

12.     Plaintiff's Complaint identifies two nominal defendants, Michael Stone and Rani Riedel. The citizenship of nominal defendants is disregarded for the purposes of removal and determining diversity jurisdiction. (See, *Strotek Corporation v. Air Transport Association of America,* 300 F.3d 1129, 1133 (9th Cir. 2002)

13.     The citizenship of Does 1-60 is also disregarded for the purposes of removal and determining diversity jurisdiction. (See, 28 U.S.C. § 1441(a) ["For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."].)

14.     Accordingly, the requisite diversity of citizenship is satisfied because plaintiff is not a citizen of the same state as defendants Brookdale Living Communities, Inc., and EmeriCare Inc., and, therefore, there is complete diversity between the parties.

**B.     Amount in Controversy**

15.     Plaintiff seeks damages, inter alia, for general damages, special damages, attorneys' fees, punitive damages, and costs of suit.   Plaintiff filed one Statement of Damages in her individual capacity and one as the Successor in Interest to Ms. Riedel with her Complaint. Plaintiff's Statement of Damages on behalf of Ms. Riedel alone seeks in excess of $2,000,000.   (See Plaintiff's Statements of Damages.) Consequently, the amount in controversy exceeds $75,000.00.

16.     Based on the foregoing, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, and removal of this action is proper pursuant to 28 U.S.C.

§1441(b).

## PROCEDURAL REQUIREMENTS FOR REMOVAL

17.    This Notice is timely under the provisions of 28 U.S.C. §1446(b). Defendants filed this Notice within 30 days of service of the initial pleading setting forth the claim for relief upon which the action is based.

18.    The United States District Court for the Central District of California embraces the county in which the state court action is now pending, and thus, this Court is a proper venue for this action pursuant to 28 U.S.C. § 84(c)(1).

19.    Written notice of this removal is being served this date on counsel for Plaintiffs pursuant to 28 U.S.C. § 1446(d).

20.    A true and correct copy of this Notice of Removal is being filed this date with the Clerk of the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants Brookdale Living Communities, Inc., and EmeriCare Inc, pray that the above-entitled action now pending in the Superior Court of the State of California, County of Los Angeles, be removed therefrom to the United States District Court for the Central District of California, and pray that said action stand so removed.

Dated:  April 7, 2017

MORRIS POLICH & PURDY LLP


By _____ /s/ _____
        Michael P. West
        Ashley A. Escudero
Attorneys for Defendants,
BROOKDALE LIVING COMMUNITIES, INC. and
EMERICARE INC.

# Exhibit "A"

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

FEB 24 2017

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

EMERICARE INC., a Delaware Corporation, doing business as
BROOKDALE SAN DIMAS;                    (See Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DENISE SHULER, an individual and as Successor In Interest on behalf
of FRANCES ANN RIEDEL, DECEASED

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court

111 N. Hill Street, Los Angeles, CA 90012
Central District - Stanley Mosk

CASE NUMBER:
*(Número del Caso):*
BC 6 51 947

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mary E. Lockington, Lockington Law Grp, 400 Oceangate, Suite 700, Long Beach, CA 90802 (562) 435-2925

| DATE: FEB 24 2017 (Fecha) | SHERRI R. CARTER | Clerk, by Judi Lara (Secretario) | , Deputy (Adjunto) |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Emericare Inc.

   under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

4. ☑ by personal delivery on *(date):* 3/8/17

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| SHULER vs. EMERICARE INC., et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

BROOKDALE LIVING COMMUNITIES INC., a Delaware Corporation; and DOES 1 - 60,

Defendants.

MICHAEL STONE, an individual; and RANI RIEDEL, an individual

Nominal Defendants.

Page __2__ of __2__

'Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1  Mary E. Lockington, SBN 206685
   **LOCKINGTON LAW GROUP**
2  400 Oceangate, Suite 700
3  Long Beach, CA 90802
   TEL (562) 435-2925
4  FAX (562) 901-9972

5  Attorneys for PLAINTIFF

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR LOS ANGELES COUNTY

10

11 DENISE SHULER, an individual and as          Case No.:      **BC 6 5 1 9 4 7**
   Successor In Interest on behalf of FRANCES
12 ANN RIEDEL, deceased;                        COMPLAINT FOR:

13          Plaintiff,
                                                1. **STATUTORY ELDER**
14 vs.                                             **ABUSE/NEGLECT;**
                                                2. **VIOLATION OF PATIENT'S BILL**
15                                                 **OF RIGHTS AND HEALTH AND**
                                                   **SAFETY CODE 1430 (b);**
16 EMERICARE INC., a Delaware Corporation,      3. **WRONGFUL DEATH;**
   doing business as BROOKDALE SAN DIMAS;       4. **NEGLIGENT HIRING, TRAINING**
17 BROOKDALE LIVING COMMUNITIES                    **AND SUPERVISION;**
   INC., a Delaware Corporation; and DOES 1 -   5. **NEGLIGENCE; and**
18 60,                                          6. **UNFAIR BUSINESS PRACTICES.**

19          Defendants,

20

21

22 MICHAEL STONE, an individual; and RANI
   RIEDEL, an individual
23

24          Nominal Defendants.

25

26      COMES NOW Plaintiff, DENISE SHULER, (hereinafter referred to as "SHULER") an

27 individual and as Successor-In-Interest on behalf of FRANCES ANN RIEDEL, decedent,

28 (hereinafter referred to as "RIEDEL"), and allege as follows:

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

FEB 2 4 2017

Sheri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over all causes of action asserted herein. Each Defendant has sufficient minimum contacts in Los Angeles County, State of California or otherwise intentionally prevails itself of the California market through participation in the care for elders in California, and other activities, so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

2.   There is no basis for federal jurisdiction as no claim asserted herein arises under federal laws and jurisdiction pursuant to 28 U.S.C. §1331 does not exist. Pursuant to 28 U.S.C. §1332(d)(4), there is also no basis for federal jurisdiction based upon diversity of citizenship as the primary defendants from which significant relief is sought and whose conduct forms a significant basis for the claims asserted, are citizens of California, having maintained their principal places of business in California at all times and the principal injuries resulting from the alleged conduct of each Defendant were incurred in the State of California.

3.   Venue is proper in this county in accordance with Section 395 of the California Code of Civil Procedure because the defendants and DOES, or some of them, conduct business in Los Angeles County.

## PARTIES

4.   At all times mentioned herein, RIEDEL was an individual residing in Los Angeles County, State of California.

5.   At all times while RIEDEL, decedent, was a resident of and/or and in their care, custody and control of DEFENDANTS, RIEDEL was over 85 years old and an "elder," pursuant to California Welfare & Institutions Code §15610.27, which fact was, at all relevant times, known to said Defendants and DOES

6.   At all times mentioned herein, SHULER, the daughter of RIEDEL is, and at all relevant time was, an individual residing in Los Angeles County.

7.   Pursuant to *California Code of Civil Procedure* §§377.10 and 377.11, SHULER is the surviving heir of DECEDENT and beneficiary of her estate.

1      8.    MICHAEL STONE and RANI RIEDEL, are heirs and natural born children of
2  FRANCES ANN RIEDEL and an indispensable party to the wrongful death action, and are
3  joined as nominal defendants.

4      9.    To date, PLAINTIFF has not received notification of any class actions being
5  initiated against the DEFENDANTS named in this case. However, to the extent that any class
6  action has been initiated or is initiated in the future against any and/or all DEFENDANTS,
7  PLAINTIFF hereby declines to be a part of any such class action and, instead, opts to proceed
8  against DEFENDANTS by way of this complaint.

9      10.    PLAINTIFF is informed and believes and on that basis alleges, that
10  EMERICARE INC., a Delaware Corporation, doing business as BROOKDALE SAN DIMAS
11  (hereinafter "BROOKDALE") is a Delaware Corporation doing business in the County of Los
12  Angeles, State of California.

13      11.    PLAINTIFF is informed and believes that BROOKDALE's principle place of
14  business is in Los Angeles County, State of California.

15      12.    PLAINTIFF is informed and believes that BROOKDALE is a facility as defined
16  in California Health & Safety Code §1250.

17      13.    PLAINTIFF is informed and believes and on that basis alleges, that
18  BROOKDALE LIVING COMMUNITIES INC. ("BROOKDALE COMMUNITIES") is a
19  Delaware Corporation doing business in the County of Los Angeles, State of California.

20      14.    PLAINTIFF is informed and believes that BROOKDALE COMMUNITIES
21  regularly conducts business in Los Angeles County, State of California and, directly or through
22  their wholly-owned subsidiaries owned, licensed, operated, administered, managed, directed
23  and/or controlled numerous skilled nursing facilities in the State of California, including but not
24  limited to BROOKDALE.

25      15.    PLAINTIFF is informed and believes that at all times mentioned herein that Kara
26  Kneedy-Cayem ("Kneedy-Cayem") whether appointed, designated or licensed to do so, or not,
27  together with various other DEFENDANTS, acted as "Administrator" and had the duty to act as
28  "Administrator" of BROOKDALE, as that word is defined in Title 22, Cal. Code Regs., at
§§72301, et seq., who had care, custody and control over RIEDEL.

16.   PLAINTIFF is informed and believes and on that basis alleges, that Kneedy-Cayem is a manager/agent/director of BROOKDALE, employed in the capacity of Administrator at BROOKDALE and was hired by BROOKDALE COMMUNITIES who has the responsibility of hiring and firing BROOKDALE's administrator and is charged with the day to day oversight of their administrator Aguinaga.

17.   PLAINTIFF is informed and believes that at all times mentioned herein, whether appointed, designated or licensed to do so, or not, together with various other DEFENDANTS, Marisol Sandoval, (hereinafter "Sandoval") acted as "Director of Nursing" and had the duty to act as "Director of Nursing" ("DON") at BROOKDALE, as that word is defined in Title 22, Cal. Code Regs., at §§70001, et seq., who had care, custody and control over RIEDEL.

18.   PLAINTIFF is informed and believes and on that basis alleges that Sandoval is a manager/agent/director of BROOKDALE, employed in the capacity of DON at BROOKDALE and was hired by BROOKDALE's administrator and BROOKDALE COMMUNITIES who has ultimate decision making authority and has the responsibility of hiring and firing BROOKDALE's employees and is charged with the day to day oversight of the residents and staff.

## BROOKDALE AND BROOKDALE COMMUNITIES' BYZANTINE CORPORATE STRUCTURE, MARKETING AND UNDERSTAFFING LEADING TO PROFITS OVER PEOPLE, INCLUDING RIEDEL

19.   PLAINTIFF is informed and believes that BROOKDALE COMMUNITIES and BROOKDALE are part of a single enterprise formed for a common purpose with a unity of interest.

20.   The viability of each of BROOKDALE COMMUNITIES' facilities, including BROOKDALE, is intertwined with their dependence on BROOKDALE COMMUNITIES consistent with this unity of interest and interdependence, the management and control of each of BROOKDALE COMMUNITIES' facilities is delegated to and/or otherwise conducted and dictated by BROOKDALE COMMUNITIES who actively participates in and manipulates the business activities of BROOKDALE COMMUNITIES' facilities, including the conduct challenged in this complaint.

1    21.    PLAINTIFF is informed and believes that the control and manipulation of

2  BROOKDALE COMMUNITIES' facilities is so pervasive that each of BROOKDALE

3  COMMUNITIES' facilities is but an agent, instrumentality, conduit, joint venture and/or alter-

4  ego of BROOKDALE COMMUNITIES in the prosecution of a single venture namely, the

5  provision of nursing home services to California consumers.

6    22.    There is such unity of interest, ownership and management that the separateness

7  of BROOKDALE COMMUNITIES and BROOKDALE has in effect ceased and an adherence to

8  the fiction of a separate existence of the multiple corporations or entities would, under the

9  circumstances here present, promote injustice and make it inequitable for BROOKDALE

10  COMMUNITIES to escape liability for obligations incurred as much for their benefit as that of

11  BROOKDALE.

12    23.    With respect to BROOKDALE, BROOKDALE COMMUNITIES, among other

13  things:

14    a.    oversees all compliance program operations;

15    b.    conducts and oversees regular and targeted training on the organization's
         compliance programs, policies and procedures, as well as federal and state

16         compliance laws and regulations affecting the skilled nursing, home health
         and hospice industries;

17    c.    leads and coordinates the efforts of all compliance personnel;

18    d.    creates, reviews, revises and updates, at a minimum annually, core elements
         of the compliance programs, including but not limited to compliance-related

19         policies and procedures;

20    e.    tracks data related to compliance issues;
    f.    initiates, directs and participates in investigations relative to compliance

21         concerns and issues, and works with management to bring such issues to
         resolution;

22    g.    works collaboratively with each of its facilities, including BROOKDALE;

23    h.    provides reports of relevant compliance program activities to the
         BROOKDALE COMMUNITIES board of directors;

24    i.    conducts formal compliance risk assessments that drive the development of
         an annual compliance work plan; and

25    j.    oversees the development, and monitors implementation, of corrective action
         plans in response to internal or external regulatory audit/survey findings.

26

27    24.    BROOKDALE COMMUNITIES exercises complete and unfettered dominion and

28  control over its nursing homes. BROOKDALE COMMUNITIES' CFO decides when to extract

money from the various nursing home facilities to make shareholder "distributions" and to pay

officer and director's "salary." At the end of each day BROOKDALE COMMUNITIES siphons money from its nursing homes, leaving some facilities with literally $0 in cash in their accounts. The result is typically an undercapitalized facility, whose budget and cash flow is completely controlled by a for-profit corporation, BROOKDALE COMMUNITIES.

25.   PLAINTIFF, based on information and belief, alleges that Defendants DOES 1 through 20, who were the owners, joint ventures, operators and/or managing agents of BROOKDALE, were all corporations and/or business entities, the exact business form(s) of which are currently unknown to PLAINTIFF as of the date of the filing of this pleading.

26.   PLAINTIFF, based on information and belief, alleges that Defendants DOES 21 through 40, who were the owners, joint ventures, operators and/or managing agents of BROOKDALE COMMUNITIES were all corporations and/or business entities, the exact business form(s) of which are currently unknown to PLAINTIFF as of the date of the filing of this pleading.

27.   PLAINTIFF, based upon information and belief, alleges that DOES 41 through 50 were employed by, and/or independent contractors of, Defendants BROOKDALE and DOES 1 through 20, and were Administrators, Directors of Nurses, Consultants, Supervisors, Registered Nurses, Licensed Vocational Nurses, Pharmacists, Physical Therapists, Certified Nursing Assistants, and non-licensed and/or-certified Support Staff.

28.   PLAINTIFF, based upon information and belief, alleges that DOES 51 through 60 were employed by, and/or independent contractors of, Defendants BROOKDALE COMMUNITIES and DOES 21 through 40, and were Administrators, Directors of Nurses, Consultants, Supervisors, Registered Nurses, Licensed Vocational Nurses, Pharmacists, Physical Therapists, Certified Nursing Assistants, and non-licensed and/or-certified Support Staff.

29.   PLAINTIFF is ignorant of the names of those Defendants sued herein as DOES 1 through 60 and for that reason has sued such Defendants by said fictitious names. PLAINTIFF will seek leave of court to amend this complaint to reflect said names when the same have been ascertained.

30.   In doing the things hereinafter alleged, DEFENDANTS, [1] and each of them, acted as the agents, servants and employees of their co-DEFENDANTS and acted both within the course and scope of said agency and employment and with the knowledge, consent, and approval of their co-DEFENDANTS.

31.   All of said acts were ratified by the co-DEFENDANTS and the managing agents of each of the DEFENDANTS by their failure to discipline any staff members for the incidents which are the subject of this lawsuit, through a consistent failure to intercede in the known pattern of elder neglect and abuse and through a consistent failure to train and educate their staff that are responsible for the safety of their residents.

32.   BROOKDALE COMMUNITIES and BROOKDALE have either owned, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in California. In either owning, operating, managing, administrating, controlling, licensing and/or supervising various skilled nursing facilities throughout the State of California, BROOKDALE COMMUNITIES and BROOKDALE were required to comply with Federal and California statutory and regulatory laws governing the operation of skilled nursing facilities.

33.   In owning, operating, managing, administrating, licensing, controlling and/or supervising various skilled nursing facilities throughout the State of California, BROOKDALE COMMUNITIES and BROOKDALE were required to ensure that their facilities were staffed with sufficient levels of qualified personnel so as to comply with the 3.2 hour requirement of Health & Safety Code §1276.5.   BROOKDALE COMMUNITIES and BROOKDALE represented to the general public, the PLAINTIFF and others similarly situated that their facilities complied with this requirement.

34.   BROOKDALE COMMUNITIES and BROOKDALE representations are consistent with their duty under California law to provide sufficient nursing staff and related services. Unfortunately, the true care received by residents, including RIEDEL, is a far cry from BROOKDALE COMMUNITIES and BROOKDALE's representations and their legal duty.

---

[1] The term DEFENDANTS is used for brevity and when the term DEFENDANTS is used it is to mean the allegation relates to both BROOKDALE and BROOKDALE COMMUNITIES and when referred as such any contention is made as to both Defendants.

35. BROOKDALE COMMUNITIES and BROOKDALE have systematically and continuously failed to comply with the 3.2 hour requirement under Health & Safety Code §1276.5 in staffing the vast majority of their skilled nursing facilities in California, including BROOKDALE, as evidence by their reckless neglect identified herein.

36. Documents submitted to the Centers for Medicare & Medicaid Services ("CMS") and other records indicate that the staffing levels at many of BROOKDALE COMMUNITIES' California skilled nursing facilities, including BROOKDALE, are, and have been, well below the 3.2 hour requirement under Health & Safety Code §1276.5 for direct resident care.

37. Despite their failure to adequately staff their skilled nursing facilities in California, which is only one of PLAINTIFF's myriad complaints herein, and their failure to provide the quality of care they claimed to provide, BROOKDALE COMMUNITIES and BROOKDALE wrongly received in the aggregate millions of dollars in payments.

38. BROOKDALE COMMUNITIES' California Nursing Facilities have consistently failed to meet even the *minimum* staffing standards, including BROOKDALE.

## DEPARTMENT OF PUBLIC HEALTH INVESTIGATIONS OF COMPLAINTS AND DEFICIENCIES

39. Unbeknownst to PLAINTIFF at the time of choosing and admitting RIEDEL to BROOKDALE, BROOKDALE had a long history, pattern and practice of neglecting their residents as evidenced in the public record and herein. As a result, proper resident monitoring and the provision of appropriate levels of patient care were greatly compromised at BROOKDALE.

40. Moreover, BROOKDALE routinely exhibited a pattern and practice of failing to maintain proper, accurate, and/or adequate medical reporting, charting, and documentation with respect to their residents, including RIEDEL.

41. Despite their failure to adequately staff their skilled nursing facilities in California, which is only one of PLAINTIFF's myriad complaints herein, and provide the quality of care they claimed to provide, BROOKDALE and BROOKDALE COMMUNITIES wrongly received in the aggregate millions of dollars in payments.

42.     Public record indicated that the overall quality of BROOKDALE is "below average" and the quality of the facility is "poor".

43.     Not surprisingly, BROOKDALE and BROOKDALE COMMUNITIES' other California facilities have had a number of reported complaints, deficiencies and citations arising from inadequate care of their elderly residents, as reflected in records maintained by CMS and the California Department of Public Health.

44.     In 2016, when RIEDEL was a resident at BROOKDALE, there were 10 complaints made by residents, 5 facility self-reported incidents, 1 state enforcement action and 19 Survey deficiencies and many of the Complaints were substantiated by the Department of Public Health.

45.     Had RIEDEL's family known of BROOKDALE COMMUNITIES' history they never would have allowed their mother to be admitted to BROOKDALE.

46.     After SHULER complained of the conduct as alleged herein to the Department of Public Health, an investigation was performed.   In December 2016 the Complaint was substantiated, a citation issued and BROOKDALE was required to submit a "plan of correction." See Exhibit "A"

## BROOKDALE AND BROOKDALE COMMUNITIES PLACING PROFITS OVER PEOPLE

47.     BROOKDALE COMMUNITIES and BROOKDALE have collectively conspired and agreed amongst themselves to engage in an intentional plan to wrongfully increase business profits through non-compliance with laws and regulations governing skilled nursing facilities, including but not limited to Health & Safety Code §§1276.5 and 1430(b) and Title 22 regulations including Title 22 C.C.R. §72527.

48.     This plan was done with the permission, consent and knowledge of BROOKDALE COMMUNITIES and BROOKDALE who each had within their power the ability and discretion to mandate that their facilities operate in compliance with applicable State and Federal laws and regulations governing the operation of skilled nursing facilities in the State of California and to employ adequate staff to meet the needs of their residents, including RIEDEL.

49.    The fiscal control and direction of BROOKDALE was that each BROOKDALE COMMUNITIES facility operated under a budget as ultimately approved and directed by BROOKDALE COMMUNITIES. These budgets called for the widespread non-compliance with the minimum staffing standards described above and resulting neglect of their residents all for corporate financial gain.

50.    BROOKDALE COMMUNITIES devises and approves the budget for it facilities, including BROOKDALE, which did not have an adequate budget to acquire the equipment, staff and training necessary for BROOKDALE to protect and provide the necessary care to its residents.

51.    BROOKDALE is inadequately capitalized as it does not have sufficient assets available to meet its debts.   There is not enough capital to cover BROOKDALE's prospective liabilities. BROOKDALE's capital is illusory compared with the business to be done and the risks of loss and thus they are not to be afforded the separate entity privilege.

52.    Adherence to the budget as mandated by BROOKDALE COMMUNITIES was enforced by Kneedy-Cayem, Sandoval, officers, directors, administrators, medical directors and managing agents of BROOKDALE COMMUNITIES and BROOKDALE.

53.    The ongoing violations of California law alleged herein are part of a corporate wide strategy, policy and practice of BROOKDALE COMMUNITIES and BROOKDALE as mandated and directed by the parent corporations, managing entities and officers in order to maximize profit in disregard of the laws and regulations governing the operation of skilled nursing facilities in the State of California, at the PLAINTIFF's expense.

54.    The California Legislature has specifically confirmed that such elder residents are a vulnerable segment of our population, whom require a heightened level of protection making BROOKDALE COMMUNITIES and BROOKDALE's misconduct all the more egregious.

55.    As the direct result of a conscious decision by the officers and directors of BROOKDALE COMMUNITIES and BROOKDALE, these DEFENDANTS developed and implemented a plan to avoid lawful staffing of their skilled nursing facilities, in violation of

1  California Health & Safety Code §1276.5, so as to maximize profit and corresponding bonuses to

2  these officers and directors of the DEFENDANTS.

3     56.    As a result of this intentional plan and civil conspiracy to understaff their

4  facilities, BROOKDALE COMMUNITIES and BROOKDALE failed to operate their facilities in

5  compliance with rules, laws, and regulations governing the operation of skilled nursing facilities

6  in the State of California, including failing to ensure that the rights of their residents as

7  enumerated in Health and Safety Code §1599.1 and Title 22 C.C.R. §72527 were not violated.

8     57.    The plan, practices and schemes alleged herein were created, mandated, directed,

9  and implemented before and after the fact and ratified by BROOKDALE COMMUNITIES and

10  BROOKDALE, by and through their managing agents, Kneedy-Cayem, Sandoval, all as a matter

11  of corporate policy and practice established and implemented by the officers and directors of

12  BROOKDALE COMMUNITIES and BROOKDALE.

13     58.    Under California law, reckless and oppressive neglect of an elder is a form of

14  elder abuse. The Elder Adult and Dependent Adult Civil Protection Act ("The Elder Abuse Act")

15  was designed to prevent neglect and abuse to California seniors. Welf. & Inst. Code §§15600 et

16  seq.

17     59.    Under The Elder Abuse Act, "abuse" is defined broadly and includes physical

18  abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment (or lack

19  thereof) resulting in physical harm or pain or mental suffering.

20     60.    "Neglect" includes the negligent failure by any care provider to exercise that

21  degree of care that a reasonable person would exercise (including, but not limited to, assistance

22  in personal hygiene; medical care; and protection from health and safety hazards). Welf & Inst.

23  Code §15610.57.

24     61.    These reckless staffing deficiencies, along with myriad of other reckless

25  deficiencies at the facility, led to the abuse, reckless neglect and ultimately the injuries of

26  RIEDEL.

27     62.    Specifically BROOKDALE COMMUNITIES and BROOKDALE advertise,

28  promote and declare via public websites, brochures, admission agreements, verbal

representations during facility visits, and other mechanisms presently unknown to PLAINTIFF

1    and according to proof at time of trial that their facilities provide care which will meet the needs

2    of residents consistent with the requirements set forth in laws and regulations governing the

3    operation of skilled nursing facilities including but not limited to Title 22 regulations. Yet these

4    representations were false.

5         63.    Among other things, DEFENDANTS advertise, promote and represent the

6    following to the general public and prospective residents via the internet, brochures, and other

7    mechanisms that:

8        a.    At all relevant times, BROOKDALE COMMUNITIES and BROOKDALE
9            represented and promised to create a culture within and for our business
             affiliates that attracts and retains innovative, caring, and ethical personnel
10           that provide quality clinical, rehabilitative, support, and administrative
             services for seniors.
11

12       b.    At all relevant times, BROOKDALE COMMUNITIES and BROOKDALE
             represented and promised to enrich the lives of those they serve with
13           compassion, respect, excellence and integrity.

14       c.    At all relevant times, BROOKDALE COMMUNITIES and BROOKDALE
15           represented and promised in doing the right thing and put the resident first,
             and the "bottom line" will take care of itself.    They also promised to
16           respect others through honesty, understanding and trust.    They believe
             they earn trust when they listen and understand, partner and solve
17

18       d.    At all relevant times, BROOKDALE COMMUNITIES and BROOKDALE
             represented and promised that their goal is not to be the biggest, but the
19           best. BRROKDALE COMMUNITIES represented they have the ability
             to serve approximately 100,000 residents. Able to serve more than 1,000
20           communities in 47 states. They have approximately 80,000 associates.

21

22       e.    At all relevant times, BROOKDALE COMMUNITIES and BROOKDALE
             represented and promised that their Rehabilitation and Skilled Nursing
23           communities provide round-the-clock nursing care and significant
             assistance with the activities of daily life. These health care centers have
24           nursing staff on-duty 24 hours a day to help individuals meet their daily
             physical, social and psychological needs.
25

26       f.    At all relevant times, BROOKDALE COMMUNITIES and BROOKDALE
             represented and promised that whether it's a short-term respite visit
27           while recovering from surgery or a long-term rehabilitation after a
             joint replacement, we have the services and care you need, when
28           you need them.

g.   At all relevant times, BROOKDALE COMMUNITIES and BROOKDALE represented and promised that they partner with you and your family to create a care plan that honors your individual preferences and needs. We treat the whole person — mind, body and spirit — with compassion and attentive care.

All of these representations, among others, were false and misleading to the general public, RIEDEL and SCHULER as identified herein.

64.   BROOKDALE COMMUNITIES, and BROOKDALE engaged in a pattern and practice of failing to ensure that their staff, including Kneedy-Cayem and Sandoval, were properly trained and/or qualified to provide appropriate care and services to their elder residents.

65.   This problem was particularly true with respect to assessing, diagnosing, and preventing dehydration, malnutrition and skin breakdown to their infirmed and elderly residents, particularly those elderly residents who were known risks and/or those elderly residents who due to physical or mental limitations were more prone to dehydration, malnutrition, pneumonia, sepsis and skin breakdown.

66.   BROOKDALE COMMUNITIES and BROOKDALE had a pattern and practice of failing to make sure that their nursing staff were properly qualified and instructed on the appropriate procedures, protocols and interventions that would ensure that residents susceptible to malnutrition, dehydration, skin breakdown and infection, such as RIEDEL, were monitored and attended to timely and appropriately to prevent dehydration, malnutrition and bed sores.

67.   BROOKDALE COMMUNITIES and BROOKDALE knew or should have known of the peril posed by their breaches of duty, knew or should have known that the peril posed the high probability of injury and acted in conscious disregard of the probability of injury.

68.   BROOKDALE COMMUNITIES and BROOKDALE are clearly more concerned with making a profit over people under their "incentive based" management contracts than ensuring that their facilities are amply staffed and trained to ensure that their residents are kept safe from harm by the facilities staff.

69.   All of the acts and omissions alleged herein constituted, among other things, ongoing practices of reckless elder neglect and abuse committed by DEFENDANTS and their agents and employees.

**RIEDEL'S ADMISSION TO BROOKDALE**

70.     RIEDEL was a vibrant 75 year old woman with a will of steel, love of life and lived independently at home. RIEDEL was loved by her family, friends and neighbors.

71.     Prior to her admission to BROOKDALE in 2016 RIEDEL lived at home alone and was able to perform the activities of daily living. She drove, shopped and socialized with her friends. Life was good!

72.     On July 2, 2016, RIEDEL, her children and grandchildren were playing outside by the pool in Mrs. RIEDEL's yard. It was like any other fun filled afternoon and they were planning on a large 4th of July family gathering.

73.     Unfortunately, while at home Mrs. RIEDEL had an accidental fall on July 3, 2016 and she was transported to the emergency department. Imaging was performed and RIEDEL was diagnosed with a broken hip. There was surgical intervention which was successful and three days later she was transferred to BROOKDALE for rehabilitation purposes.

**TASKS THAT WERE NOT BEING PERFORMED AT ADEQUATE LEVELS AT BROOKDALE AND THE FAILURE OF WHICH HINDERED RIEDEL'S ABILITY TO REHABILITATE AND LEAD TO UNNECESSARY SUFFERING, INJURY AND UNTIMELY DEATH [2]**

74.     Throughout RIEDEL's admission she was noted to be a high fall risk, she was a high risk for skin breakdown, she was a high risk for malnutrition, needed assistance with meals and she was a high risk for dehydration. As such, prevention protocol needed to be in place and she was to be monitored for such things.

75.     Due to RIEDEL's immobility she was a full assist with the daily activities of living. ("ADL's)

76.     RIEDEL was simply at the mercy of BROOKDALE's staff and had she or her family known of BROOKDALE's atrocious history she never would have agreed to placement at BROOKDALE.

---

[2] These examples are not inclusive and merely just a flavor of the bad acts.

77.     The following is a list of tasks that were not being performed at adequate levels at BROOKDALE on each day of RIEDEL's admission and the failure of which hindered her ability to recover and lead to unnecessary suffering and injury:

A. Hydration

It is beyond medical debate that without consistent hydration, the body will weaken and die. This is especially true in the dependent adults. Dehydration can lead to organ failure, life-threatening urinary tract infections (UTIs), contribute to the development of and further deterioration of decubitus ulcers, cause disorientation, temporary dementia and even death.

While at BROOKDALE, RIEDEL could not get a glass of water herself or could not ask for it because no one was around. CNAs need to offer water to residents at least every two hours and push liquids at mealtimes, but routinely failed to do so. One of the most common requests of residents at BROOKDALE and BROOKDALE COMMUNITIES' facilities is for water. The residents that cannot ask for water are at even more risk.

During her admission at BROOKDALE, BROOKDALE failed to monitor her hydration and as such she became severely dehydrated.

B. Nutrition

Weight loss has been a noticeable problem among the general population of the residents in BROOKDALE and BROOKDALE COMMUNITIES facilities. Many of the staff members that give tours around the facilities brag about their dieticians and their attention to diet. Residents, including RIEDEL, indicate that the food was not good and at mealtimes there did not appear to be enough CNAs to help feed the residents, especially the bed-bound ones in their rooms, such as RIEDEL. Residents are unaware that they have the right to ask for a substitute meal if they do not like the food that was served OR that they had the right to nutritional shakes between meals.

Malnutrition leads to muscle wasting because of the lack of protein, contributes to skin breakdown and can lead to temporary dementia. Large weight loss can make the residents more at risk for organ failure and disease. It can take up to 45 minutes to feed an impaired or bed-bound resident, and many days RIEDEL needed assistance but no one was around.

During her admission at BROOKDALE, BROOKDALE they failed to monitor her weight and nutritional intake and she a significant amount weight which hindered her ability to rehabilitate.

C. Toileting

Given her hip surgery and non-ambulatory status, RIEDEL needed assistance ambulating and toileting. RIEDEL would regularly put on her call light and waited well over 45 minutes before someone would come to tend to her.

Sitting in feces for a lengthy period can lead to life-threatening infections, infected decubitus ulcers and skin breakdown, which is what occurred to RIEDEL. CNAs need to check a resident at least every two hours for regular toileting and answer call lights promptly to prevent problems.

During her admission at BROOKDALE, this was not being done hindering her ability to rehabilitate.

**D. Personal Hygiene, Repositioning and Skin Breakdown**

Skin breakdown, especially that appear on the hips, tailbone (coccyx) area, feet and heels can be prevented. Residents need to be repositioned at least every two hours in their bed or wheelchair to prevent life-threatening decubitus ulcers. Keeping the skin clean and dry is also necessary to prevent the ulcers. CNAs should be the first to be able to notice reddened areas that can be the first stage of a decubitus ulcer.

Unfortunately, at BROOKDALE while RIEDEL was a resident in 2016, the CNAs were too busy or too untrained to be able to spot a problem and RIEDEL sustained skin breakdown which unfortunately worsen to an advanced stage before they were even tended to.

BROOKDALE failed to have enough CNAs to turn and carefully check RIEDEL each time she was changed which led to her injuries, including skin breakdown, sepsis and ultimately an untimely death.

78.    During RIEDEL's relatively short stay at BROOKDALE, she dislocated her hip four (4) times due to the improper protocol being used by staff when they happened to take the time to tend to her. Several of the dislocations landed her back in the hospital and the doctors stated that had BROOKDALE's staff been moving her with care, the dislocations would have been prevented.

79.    When the staff would not come into her room to assist her she would signal staff through the call bell system. Usually, no one responded for 45 minutes or more.

80.    When staff would finally arrive, RIEDEL and her daughter would have to remind the staff that she needed to be repositioned. Staff would begrudgingly help to reposition her. This would be occurring on a daily basis and the staff actually indicated and were apologetic that they had too many residents and not enough time to help everyone that they were assigned to.

81.    All of this was witnessed by family and friends and when they would visit staff simply avoided RIEDEL's room and, hence, no repositioning for long periods of time leading to RIEDEL's skin breakdown.

82.    Since RIEDEL was a diabetic, BROOKDALE was to monitor her blood sugar levels several times a day which was not being performed as evidenced by SCHULER as when she would visit she would never witness the any blood glucose testing.

83.    Ultimately, RIEDEL became non-responsive and was rushed to the hospital with her sugar levels registering 690! Normal sugar levels are 120-140 and RIEDEL's high level could have caused her death.

84.    During RIEDELS admission she lost a large amount of weight. This was due to the fact that BROOKDALE did not have adequate staff to ensure proper nutrition and simply did not take the time to feed her.

85.    Due to RIEDEL's non-ambulatory status, and the failure for BROOKDALE's staff to monitor her skin, RIEDEL developed bed sores. Staff failed to inform RIEDEL's family of physician about this change in condition precluding RIEDEL's family or physician from intervening, advocating on RIEDEL's behalf or providing intervention.

86.    Even the cleanliness of the facility was sub-par.  Many times there would be water, urine and feces on the floors of the rooms and bathrooms, dirty linen not in a hamper and fruit flies in the room due to leftover being left out in the rooms and community areas.

87.    Ultimately, when RIEDEL was rushed to the hospital she was diagnosed with stage 4 bed sores and finally treatment was started at the hospital.

88.    Due to the lack of care at BROOKDALE, timely and appropriate interventions obtained, RIEDEL became riddled with infection.  RIEDEL was so septic that there was no medical intervention that was available to reverse the infection and she died shortly thereafter.

89.    Not surprising, when SHULER requested, in writing, RIEDEL's complete record from RIEDEL's her admission at BROOKDALE they failed to and refused to provide them as required by law.

90.    BROOKDALE COMMUNITIES, BROOKDALE, Kneedy-Cayem and Sandoval, on a continuing and ongoing basis, among other things:

        a.  willfully and recklessly failed to request medical attention due to RIEDEL's dehydration, malnutrition and infection;

        b.  willfully and recklessly failed to properly train their personnel in the prevention of dehydration, malnutrition and infection;

c.  willfully and recklessly failed to ensure that RIEDEL was adequately repositioned;

d.  willfully and recklessly failed to ensure the use of mattresses or mattress-covers designed to reduce the occurrence or severity of bedsores/decubitus ulcers;

e.  willfully and recklessly failed to communicate information to RIEDEL, her family and her physician about her skin breakdown;

f.  willfully and recklessly failed to monitor RIEDEL's nutritional intake;

g.  willfully and recklessly failed to monitor RIEDEL's liquid intake and output;

h.  willfully and recklessly failed to prevent, diagnose and monitor RIEDEL's sepsis;

i.  willfully and recklessly failed to ensure that RIEDEL had timely and adequate access to medical care by an appropriate specialist;

j.  willfully and recklessly failed to timely hospitalize RIEDEL;

k.  willfully and recklessly failed to properly acquire and maintain RIEDEL's care assessment records;

l. willfully and recklessly failed to acquire and maintain RIEDEL's care planning records;

m.  willfully and recklessly failed to provide RIEDEL with necessary services to maintain good personal and oral hygiene; and

n.  willfully refused to provide a copy of RIEDEL's medical records to her upon her request in violation of health and safety code section 123100 et seq.

91.    All of these actions were discussed with staff, including the administrator and DON, who did nothing, thereby ratifying the conduct

92.    Given the identified failures, RIEDEL instead of improving quickly she declined while at BROOKDALE.  BROOKDALE staff simply was not adequately trained to properly care for and handle RIEDEL's needs.

93.    The administrator of BROOKDALE, Kneedy-Cayem, as well as other managing agents were fully aware of the understaffed nature of BROOKDALE and the failure to adequately educate their staff, yet these managing agents took no steps to provide the care to protect the health of RIEDEL, thereby ratifying the conduct.

94.    The ratification occurred through BROOKDALE's managing agents' failure to take steps to provide adequate staffing, failure to oversee the care of RIEDEL and failure to conduct a meaningful investigation concerning the abuse at BROOKDALE.

95.    The substandard care, reckless and oppressive neglect and neglect got so bad that RIEDEL and her family refused for her to be re-admitted to BROOKDALE.

1      96.    RIEDEL was provided with severely sub-standard services while at

2  BROOKDALE and suffered physical injury to her being as well as suffered emotional distress.

3      97.    Elder abuse remedies, punitive damages, and maximum allowable general

4  damages, in addition to. liens for hospitalization based medical services, will be appropriate in

5  this case due to the conduct as identified herein.

6  **FIRST CAUSE OF ACTION**

7  **STATUTORY ELDER ABUSE/NEGLECT**

8  **(SHULER, as successor in interest, as against all DEFENDANTS and DOES 1 - 60)**

9      98.    PLAINTIFF RIEDEL hereby repeats, re-alleges and incorporates by this

10  reference each and every allegation from paragraphs 1 through 97 of this Complaint, as though

11  these paragraphs were repeated and set forth in full herein. [3]

12      99.    RIEDEL was an "elder" within the meaning of California Welfare & Institutions

13  Code §15610.23, and was recklessly neglected and physically abused by DEFENDANTS and

14  DOES, pursuant to that Statute, when said DEFENDANTS, including DOES 1- 60, caused,

15  among others:

16     (a) Physical abuse, neglect, abandonment and other treatment, or lack thereof with resulting physical harm, pain or mental suffering; and

17     (b) the deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering.

18

19      100.   The purpose of the California Elder Abuse Act, Welfare & Institutions Code

20  §15610 et seq. is to protect a particularly vulnerable portion of the population, of which RIEDEL

21  was a member throughout the time the herein alleged acts and omissions on the part of

22  DEFENDANTS and DOES, from mistreatment in the form of abuse and custodial neglect.

23      101.   Neglect within the meaning of the California Elder Abuse Act, that is, California

24  Welfare and Institutions Code §15610.57, is the failure of those responsible for attending to the

25  basic needs and comforts of elderly or dependent adults, regardless of their professional

26  standing, to carry out their custodial obligations.

27

28

---

[3] For brevity, Plaintiff does not repeat or re-allege the continuing and ongoing bad acts under each cause of action as they are all incorporated by reference into each cause of action.

102.   DEFENDANTS and DOES violated <u>California Welfare and Institutions Code</u> <u>§15610.57</u>, since they were responsible for the care and custody of RIEDEL, but failed to exercise that degree of care that a reasonable person in a like position would exercise, as described herein.

103.   Specifically, and without limiting the other allegations of this Complaint and those to be learned through discovery and according to proof at time of trial, the DEFENDANTS wrongfully withheld required services to RIEDEL that they were legally mandated to provide, including:

- The wrongful withholding of required care to RIEDEL in failing to timely, accurately and competently perform assessments of the care requirements of RIEDEL as required by 22 California *Code of Regulations* §72311 thereby failing to provide required care in the absence of said assessments;

- The wrongful withholding of required care to RIEDEL in failing to timely and accurately notify RIEDEL's family and physician of sudden and/or marked adverse changes in the signs, symptoms or behavior by RIEDEL as required by 22 California *Code of Regulations* §72311;

- The wrongful withholding of required care to RIEDEL in failing to obtain and administer on a prompt and timely basis, drugs and equipment such as pressure relieving devices prescribed under conditions which presented a risk to the health, safety and/or security of RIEDEL as required by 22 California *Code of Regulations* §72311;

- The wrongful withholding of required care to RIEDEL in failing to treat her with dignity and respect as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL in failing to provide RIEDEL with good hygiene, including care of her skin as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL in failing to reposition her body positions for preventative skin care in accordance with the needs of the patient as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL in failing to timely and properly use pressure reducing devices upon RIEDEL as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL in failing to provide care to RIEDEL to maintain clean, dry skin free from urine and feces as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL in failing to carry out RIEDEL's physicians orders for administration of medication and treatment as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL in failing to notify honestly and timely RIEDEL's family and physician when a decubitus ulcer first occurred as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL in failing to provide RIEDEL with good nutrition and with necessary fluids and hydration as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL and answer RIEDEL's call signals promptly as required by 22 California *Code of Regulations* §72315;

- The wrongful withholding of required care to RIEDEL in failing to have employed, and on duty, sufficient staff to provide the necessary nursing services for RIEDEL as required by 22 California *Code of Regulations* §72329;

- The wrongful withholding of required care to RIEDEL in failing to have. employed and on duty staff with required qualifications to provide the necessary nursing services and care, as required by 22 California *Code of Regulations* §72329;

- The wrongful withholding of required care to RIEDEL in failing to provide RIEDEL with the necessary custodial and professional care to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care, as required by 22 California *Code of Regulations* §72515(b);

- The wrongful withholding of required care to RIEDEL in failing to respect RIEDEL's right to be free from mental and physical abuse, which right is protected by 22 California *Code of Regulations* §72527(a)(10);

104.    Specifically, and in addition to the acts and omissions herein alleged, DEFENDANTS and DOES, abandoned and neglected RIEDEL's needs while a resident at BROOKDALE.

105.    By virtue of the herein-above described acts and omissions, DEFENDANTS and DOES, who were responsible for the care and/or custody of RIEDEL, oppressively neglected and abused RIEDEL, when they neglected her and otherwise deprived her of goods or services that were necessary to avoid physical harm and mental suffering.

1    106.    By virtue of the herein-above described acts and omissions, DEFENDANTS and

2    DOES acted with recklessness, oppression, fraud, and/or malice in the commission of this abuse

3    within the meaning of California Welfare and Institutions Code §15657.

4    107.    DEFENDANTS and DOES learned of the acts and omissions of their employees

5    and/or other persons, yet approved, authorized and/or ratified that wrongful conduct; and/or

6    DEFENDANTS and DOES committed said acts of oppression, fraud or malice by way of an

7    officer, director or managing agent of the corporation.

8    108.    The actions of DEFENDANTS and DOES as herein alleged were of such a

9    reprehensible character, and were deliberately directed by said DEFENDANTS and DOES at

10    causing harm to RIEDEL, so as to justify the award of punitive damages under California Civil

11    Code §3294 to punish said DEFENDANTS and DOES and to deter DEFENDANTS and DOES

12    from similar wrongful conduct in the future.

13    109.    Specifically, pursuant to California Civil Code §3345(b)(1), RIEDEL alleges that

14    DEFENDANTS and DOES knew or should have known that their conduct was directed to an

15    elder, that is, RIEDEL.

16    110.    Further, pursuant to California Civil Code §3345(b)(3), RIEDEL alleges that an

17    elder residing at  BROOKDALE, specifically RIEDEL, was substantially more vulnerable than

18    other members of the public to said DEFENDANTS' and DOES' conduct because of poor health

19    or infirmity, impaired understanding, restricted mobility or disability, and that RIEDEL actually

20    suffered substantial physical and emotional damage resulting from said DEFENDANTS' and

21    DOES' conduct. An affirmative finding in regard to either of these factors permits the imposition

22    of punitive and/or treble damages, according to California Civil Code §3345.

23    111.    Since the gravamen of the  Dependent Abuse Cause of Action is the EADACPA

24    and not the professional negligence of a health care provider, section 425.13(a) of the Cal. Code

25    of Civil Procedure does not apply to RIEDEL's punitive damage claims against DEFENDANTS

26    and DOES for elder abuse.  Country Villa Claremont Healthcare Ctr., Inc. v. Superior Court

27    (2004) 120 Cal.App.4th 126,435.

28    112.    As a result of the alleged acts and omissions, RIEDEL incurred physical damages

and pain and suffering damages which survive under the Elder Abuse statutes.

1    113.   As a result of the alleged acts and omissions, RIEDEL seeks general, special and

2    punitive damages, reasonable attorneys' fees and all other remedies permitted by law.

3

4                            SECOND CAUSE OF ACTION

5                    VIOLATION OF PATIENT'S BILL OF RIGHTS AND
                              HEALTH AND SAFETY CODES
6        (SHULER, as successor in interest, as against DEFENDANTS and DOES 1 - 60)

7    114.   PLAINTIFF hereby repeats, re-alleges and incorporates by this reference each

8    and every allegation from paragraphs 1 through 113 of this Complaint, as though these

9    paragraphs were repeated and set forth in full herein.

10   115.   *California's Health & Safety Code* creates a private right of action for any

11   resident or patient of a skilled nursing facility against the licensee of the facility that violates any

12   rights of the resident or patient as set forth in the Patient's Bill of Rights.

13   116.   BROOKDALE is a licensee and BROOKDALE COMMUNITIES its alter-ego as

14   described herein.

15   117.   *California's Health & Safety Code* provides that a current or former resident or

16   patient of a facility may bring a civil action against the licensee of a facility who violates any

17   rights of the resident or patient as set forth in the Patient's Bill of Rights as enumerated in

18   §72527 of Title 22 of the California Code of Regulations, which incorporates Health and Safety

19   code section 1599, or any other right provided for by federal or state law or regulation.

20   118.   *Cal. Health and Safety Code Section 1599* reads in pertinent part:

21       Written policies regarding the rights of patients shall be established and shall be
         made available to the patient, to any guardian, next of kin, sponsoring agency or
22       representative payee, and to the public. Those policies and procedures shall
         ensure that each patient admitted to the facility has the following rights and is
23       notified of the following facility obligations, in addition to those specified by
         regulation:
24              (a) The facility shall employ an adequate number of qualified personnel to
25       carry out all of the functions of the facility.
                (b) Each patient shall show evidence of good personal hygiene and be
26       given care to prevent bedsores, and measures shall be used to prevent and reduce
         incontinence for each patient.
27              (c) The facility shall provide food of the quality and quantity to meet the
28       patients' needs in accordance with physicians' orders.

(d) The facility shall provide an activity program staffed and equipped to meet the needs and interests of each patient and to encourage self-care and resumption of normal activities. Patients shall be encouraged to participate in activities suited to their individual needs.

(e) The facility shall be clean, sanitary, and in good repair at all times.

(f) A nurses' call system shall be maintained in operating order in all nursing units and provide visible and audible signal communication between nursing personnel and patients. Extension cords to each patient's bed shall be readily accessible to patients at all times.

119.   Further, *Health & Safety Code §1276.5*, as amended, states in pertinent part: Commencing January 1, 2000, the minimum number of actual nursing hours per patient required in a skilled nursing facility shall be 3.2 hours, except as provided in Section 1276.9.

120.   Defendants have violated and continue to violate the resident's bill of rights and *Health and Safety Codes* by, among other things identified hereinabove:

  a. failing to provide and maintain a safe environment for RIEDEL and protect RIEDEL from injuries;

  b. failing to employ an adequate number of qualified personnel to carry out all of the functions of the facility;

  c. failing to employ adequate number of qualified personnel to ensure the safety of its residents;

  d. failing to ensure that the DEFENDANTS' facilities were clean, sanitary, and in good repair at all times;

  e. failing to respond to the call bell;

  f. failing to ensure adequate nutrition;

  g. failing to ensure adequate hydration; and

  h. failing to provide adequate repositioning so as to avoid bed sores.

121.   Among other remedies, California *Health & Safety Code* authorizes the recovery of statutory damages up to $500.00, attorneys' fees and costs and injunctive relief and these remedies are cumulative to any other remedies provided by law.

122.   As a result of the alleged acts and omissions, RIEDEL incurred physical damages and pain and suffering.

123.   The actions of DEFENDANTS and DOES as herein alleged were of such a reprehensible character and were deliberately directed by said DEFENDANTS and DOES at causing harm to RIEDEL so as to justify trebling of damages under *Civil Code §3345.*

124.   As a result of the alleged acts and omissions, RIEDEL seeks general, special and punitive damages, reasonable attorneys' fees and all other remedies permitted by law.

### THIRD CAUSE OF ACTION

### WRONGFUL DEATH
#### (SHULER, an individual, as against all DEFENDANTS and DOES 1 - 60)

125.   SHULER hereby repeats, re-alleges and incorporates by this reference each and every allegation from paragraphs 1 through 124 of this Complaint, as though these paragraphs were repeated and set forth in full herein.

126.   BROOKDALE's breach of their duties, both as to the standard of care and reasonable person duties, as well as those created by statute and regulation were the direct, actual, legal, proximate and contributory cause of RIEDEL's injuries and death.

127.   RIEDEL would not have suffered the injuries and untimely death described herein but for the DEFENDANTS' conduct and breaches of duty.

128.   The injuries and untimely death suffered by RIEDEL were foreseeable as the DEFENDANTS knew or should have known that their conduct would lead to injuries and death of the kind suffered by RIEDEL.

129.   SHULER, is a surviving daughter and heir of RIEDEL.

130..   As a result of the conduct alleged herein by the DEFENDANTS, RIEDEL died on August 22, 2016.

131.   Prior to the death of RIEDEL, SHULER enjoyed the love, society, comfort, and attention of RIEDEL.

132.   As a proximate result of the acts and omissions alleged herein (both of common law and statutory neglect) of the DEFENDANTS, SHULER sustained loss of the society, comfort, attention, and love of RIEDEL and incurred funeral and related expenses in a sum according to proof at trial.

### FOURTH CAUSE OF ACTION

### NEGLIGENT HIRING, TRAINING AND SUPERVISON
#### (SHULER, as successor in interest, as against all DEFENDANTS and DOES 1 - 60)

133.   PLAINTIFF hereby repeats, re-alleges and incorporates by this reference each and every allegation from paragraphs 1 through 132 of this Complaint, as though these paragraphs were repeated and set forth in full herein.

134.   PLAINTIFF hereby alleges the DEFENDANTS' negligently hired, trained, supervised and/or retained employees including, Kneedy-Cayem, its administrator, Sandoval, its

1   DON, certified nursing assistants, registered nurses, licensed vocational nurses and other staff

2   members whose names are presently not known to PLAINTIFF but will be sought via discovery.

3       135.   That in fact many of DEFENDANTS' certified nursing assistants, registered

4   nurses, licensed vocational nurses, physicians and other staff members whose names are

5   presently not known to PLAINTIFF but will be sought via discovery, were unfit to perform their

6   job duties and DEFENDANTS knew, or should have known, that they were unfit and that this

7   unfitness created a risk to elder and dependent residents at BROOKDALE, such as RIEDEL.

8       136.   This knowledge on the part of DEFENDANTS was, or should have been,

9   acquired by DEFENDANTS through various mechanisms including the pre-employment

10  interview process, reference checks, probationary period job performance evaluations, other

11  periodic job performance evaluations and/or disciplinary processes.

12      137.   DEFENDANTS failed to properly and completely conduct a comprehensive pre-

13  employment interview process and reference checks as to the many certified nursing assistants,

14  registered nurses, licensed vocational nurses, physicians and others whose names are presently

15  not known to PLAINTIFF but will be sought via discovery. Had DEFENDANTS conducted a

16  comprehensive pre-employment interview process and reference checks they would have

17  discerned that these persons were unfit to perform their job duties.

18      138.   DEFENDANTS failed to properly and completely conduct and thereafter ignored

19  the content of probationary period job performance evaluations, other periodic job performance

20  evaluations and/or disciplinary process as to the many certified nursing assistants, registered

21  nurses, licensed vocational nurses, physicians and others whose names are presently not known

22  to PLAINTIFF but will be sought via discovery. Had DEFENDANTS done so they would have

23  discerned that these persons were unfit to perform their job duties.

24      139.   That as the result of the unfitness of the many certified nursing assistants,

25  registered nurses, licensed vocational nurses, physicians and others whose names are presently

26  not known to PLAINTIFF but will be sought via discovery, RIEDEL was injured in an amount

27  and manner to be proven at time of trial.

28      140.   That DEFENDANTS' negligence in hiring, supervising and/or retaining the many

certified nursing  assistants, registered nurses, licensed vocational nurses and others whose

1   names are presently not known to PLAINTIFF but will be sought via discovery, caused RIEDEL

2   injury in an amount and manner to be proven at time of trial.

3       141.   As a result of the alleged acts and omissions, PLAINTIFF seek general and

4   special damages and all other remedies permitted by law.

5   **FIFTH CAUSE OF ACTION**

6   **NEGLIGENCE**

7   **(SHULER, as successor in interest, as against all DEFENDANTS and DOES 1 - 60)**

8       142.   PLAINTIFF hereby repeat, re-alleges and incorporate by this reference each and

9   every allegation from paragraphs 1 through 141 of this Complaint, as though these paragraphs

10   were repeated and set forth in full herein.

11       143.   DEFENDANTS and DOES had a duty not to act in a manner harmful to

12   PLAINTIFF, a duty to provide services to RIEDEL and a duty to communicate with RIEDEL

13   both truthfully and professionally as to the true status of care being provided to RIEDEL,

14   INCLUDING RIEDEL's changes in condition.

15       144.   DEFENDANTS and DOES breached their duties in doing, or not doing, the

16   things as alleged herein.

17       145.   DEFENDANTS and DOES further had a duty to exercise reasonable care and

18   prudence to insure the protection of RIEDEL and that the actions taken by DEFENDANTS and

19   DOES as set forth above would not harm RIEDEL.

20       146.   DEFENDANTS and DOES had a duty of full disclosure to RIEDEL and her

21   family regarding any irregular incident, occurrence or change in condition while RIEDEL was in

22   DEFENDANTS and DOES' care.

23       147.   DEFENDANTS were under a statutory duty to do so and their failure took away

24   RIEDEL and SHULER's ability to advocate for RIEDLE's care.

25       148.   DEFENDANTS and DOES breached their duty by failing to exercise reasonable

26   care and prudence in RIEDEL's care while RIEDEL was admitted to BROOKDALE by, among

27   other things, not tending to RIEDEL's needs, abandoning RIEDEL, allowing RIEDEL to

28   become injured and suffer in pain by failing to immediately inform RIEDEL of changes in her

condition and by not timely or immediately obtaining medical intervention.

149. As a result of the alleged acts and omissions, RIEDEL incurred actual damages and pain and suffering damages as well as emotional distress damages.

150. As a result of the alleged acts and omissions, PLAINTIFF seek general and special damages and all other remedies permitted by law.

### SIXTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

**(SHULER, as successor in interest, as against all DEFENDANTS and DOES 1 - 60)**

151. PLAINTIFF hereby repeat, re-alleges and incorporate by this reference each and every allegation from paragraphs 1 through 150 of this Complaint, as though these paragraphs were repeated and set forth in full herein.

152. DEFENDANTS are a natural person, corporation, firm, partnership, association or other organization of persons as defined by *Bus. & Prof. Code §17201* who was employed or engaged in the business of providing, licensing, operating, managing, administrating and/or directing the custodial and/or health care services to residents of their respective facilities, including RIEDEL.

### Defendant's Unlawful and Unfair Business Acts

153. As set forth above, DEFENDANTS engaged in unlawful and unfair business acts in violation of the *Elder Abuse and Dependent Adult Civil Protection Act*, the *California Health & Safety Code, the California Code of Regulations* and/or the *Federal Code of Regulations* as set forth above, specifically including:

    a. DEFENDANTS failed to operate their facilities in compliance with applicable federal and state laws/regulations;

    b. DEFENDANTS failed to maintain their staff levels at its facility as mandated by law;

    c. DEFENDANTS failed to employ an adequate number of qualified personnel to carry out the functions of its facility;

    d. DEFENDANTS failed to provide RIEDEL with the care and services mandated by law and which were necessary for her health and safety;

    e. DEFENDANTS failed to protect and respect RIEDEL's patient rights as mandated by law;

    f. DEFENDANTS failed to provide their staff with the training mandated by law;

    g. DEFENDANTS failed to establish, implement and review policies and procedures for the operation of their facilities as mandated by federal and state nursing home laws;

h.  DEFENDANTS failed to provide sufficient resources to the facility so that the needs of the patients, including RIEDEL, could be met in accordance with the federal and state laws/regulations; and

i.  DEFENDANTS represented through advertising that they provide superior care when in fact they provided sub-standard care.

........among other representations.

154.  DEFENDANTS' unfair business acts were likely to offend established public policy or were immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers, including RIEDEL.

155.  DEFENDANTS also charged for services that were not actually rendered, i.e. physical therapy etc. and thereby were compensated by RIEDEL which they were not entitled and RIEDEL is entitled to restitution.

156.  The unlawful and unfair business acts of DEFENDANTS, as described herein, were encouraged, promoted and mandated by DEFENDANTS and DOES in order to maximize the business profits of its facility and to provide funds to pay bonuses to the officers, directors and members of the governing body of its facility.

### Remedies and Damages

157.  As a result of DEFENDANTS' unlawful and unfair business practices, including advertising that PLAINTIFF relied on, as identified herein above, DEFENDANTS received monetary compensation from RIEDEL, for providing care to RIEDEL which DEFENDANTS either did not render or which it rendered in a fashion that did not conform with applicable laws/regulations and, thereby, DEFENDANTS were unjustly enriched.

158.  All of the above acts were authorized, ratified and/or encouraged by DEFENDANTS' managing agents as they are the ones that approve the marketing techniques and budgets for DEFENDANTS.

159.  Pursuant to *Bus. & Prof Code* §17205, the remedies sought in this cause of action, i.e. restitution, are cumulative to any other remedies available to PLAINTIFF under all other causes of actions pled herein.

All of the above-described acts and/or omissions caused the damages alleged in the Prayer for Damages for this cause of action as set forth hereinafter.

## DEMAND FOR JURY TRIAL

PLAINTIFF demands that this action be tried to a jury.

## PRAYER

WHEREFORE, PLAINTIFF prays for the following damages:

ON THE FIRST CAUSE OF ACTION:

1. Special damages (economic damages), according to proof;

2. For general damages (non-economic), including, but not limited to, pain and suffering;

3. For reasonable attorneys' fees and costs as allowed pursuant to California Welfare & Institution Code section 15657; and

4. For punitive and/or treble damages according to California Civil Code §§3294 and 3345.

ON THE SECOND CAUSE OF ACTION:

1. For statutory damages, according to proof; and

2. For reasonable attorney's fees and costs as allowed pursuant to statute.

ON THE THIRD, FOURTH AND FIFTH CAUSES OF ACTION:

1. Special damages (economic damages), according to proof; and

2. For general damages (non-economic), according to proof.

ON THE SIXTH CAUSE OF ACTION:

1. Restitution of benefits received;

2. Injunctive relief; and

3. Treble damages as permitted by Civil Code section 3345.

ON ALL CAUSES OF ACTION:

1. For costs of suit herein incurred; and

2. For such other and further relief as the court may deem proper and permitted by law.

///

///

Dated:  February 22, 2017

Respectfully Submitted,
LOCKINGTON LAW GROUP

By: _____
Mary E. Lockington
Attorneys for PLAINTIFF

COMPLAINT
31

EXHIBIT A



COUNTY OF LOS ANGELES
**Public Health**



CYNTHIA A. HARDING, M.P.H.
Interim Director

JEFFREY D. GUNZENHAUSER, M.D., M.P.H.
Interim Health Officer

ANGELO J. BELLOMO, REHS, QEP
Deputy Director for Health Protection

TERRI S. WILLIAMS, REHS
Director of Environmental Health
5050 Commerce Drive
Baldwin Park, California 91706
TEL (626) 430-5100 • FAX (626) 813-3000

BOARD OF SUPERVISORS

Hilda L. Solis
First District

Mark Ridley-Thomas
Second District

Sheila Kuehl
Third District

Janice Hahn
Fourth District

Kathryn Barger
Fifth District

December 22, 2016


Denise Shuler,
105 S. Elm St.
Alhambra, CA 91801

Dear Shuler:

FACILITY: Brookdale San Dimas
COMPLAINT NUMBER: CA00506536

The Licensing & Certification Program (L&C) within the California Department of Public Health has completed an investigation of your complaint concerning Quality of Care at Brookdale San Dimas. L&C made an unannounced visit to the facility on October 24, 2016 and investigated circumstances surrounding your complaint through direct observation, interviews, and review of documents. Ms. Abigail Burciaga., HFEN discussed the outcome of this investigation with you during a telephone call on October 26, 2016. Ms. Abigail Burciaga explained to you that we:

  **X**   have substantiated your complaint.
  ____   substantiated other, unrelated violation(s) not specific to your complaint allegation(s).
  ____   were not able to substantiate your complaint.

As discussed with you by Ms. Burciaga, the basis for this finding is as follows:

  ____   L&C validated the complaint allegation during the onsite visit.
  ____   L&C was not able to validate the complaint allegation, but did identify other unrelated violations during the onsite visit.
  **X**   L&C validated the complaint allegation, but determined through direct observation, interviews, and/or review of documents that the facility did not violate any State and/or Federal laws or regulations.
  ____   L&C was not able to validate the complaint allegation through direct

Denise Shuler, Annabelle De La Torre, Lizette Arzola
Page 2
December 22, 2016

Section 1421(a) of the California Health and Safety Code provides any duly
authorized officer, employee, or agent of the state department to enter and
inspect any long-term health care facility, including, but not limited to,
interviewing residents and reviewing records, at anytime to enforce the
provisions of this chapter.

Section 1420(b) of the California Health and Safety Code provides that you
have the right to an informal conference if you are dissatisfied with the
Department's findings. To exercise this right, you must notify this office in
writing within thirty (30) business days of receipt of this notice. If you request an
informal conference, the Department will offer the facility licensee an
opportunity to participate. The Department will attempt to hold the informal
conference within thirty (30) calendar days of our receipt of your request.
Within ten (10) working days following the informal conference, the Department
will notify you and the licensee in writing of the results.

Thank you for sharing your concerns, we will continue our efforts to ensure that
patients receive care, services and reside in an environment in accordance with
their needs and preference.

Should you have any questions, please contact Anita Scott, Health Facilities
Evaluator Supervisor, at (626) 430-5600.

Sincerely,

Nwamaka Oranusi, Acting Chief
Health Facilities Inspection Division

Anita Scott, RN, Supervisor
San Gabriel District Office
5050 Commerce Dr., Suite 102
Baldwin Park, CA 91706

# Exhibit "B"



**CORPORATION SERVICE COMPANY®**

# Notice of Service of Process

**null / ALL**
**Transmittal Number: 16353190**
**Date Processed: 03/10/2017**

| Primary Contact: | Jamie Curry<br>Brookdale Senior Living<br>111 Westwood Place<br>Suite 400<br>Brentwood, TN 37027 |
|---|---|
| Electronic copy provided to: | Marti Downey<br>Eugenia Liu<br>Timothy Cesar<br>Jennifer Fitzpatrick<br>Laurel Johnston |

| | |
|---|---|
| Entity: | Emericare Inc<br>Entity ID Number 2760758 |
| Entity Served: | Emericare Inc. |
| Title of Action: | Denise Shuler vs. Emericare Inc. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Wrongful Death |
| Court/Agency: | Los Angeles County Superior Court, California |
| Case/Reference No: | BC651947 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 03/09/2017 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Mary E. Lockington<br>562-435-2925 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscglobal.com

## CERTIFICATE OF SERVICE

*Denise Shuler, et al. vs. Emericare, Inc., et al.*
*U.S. District Court – Central*

I, the undersigned, an employee of Morris Polich & Purdy LLP, located at 1055 West Seventh Street, 24th Floor, Los Angeles, California, 90017 declare under penalty of perjury that I am over the age of eighteen (18) and not a party to this matter, action or proceeding.

On April 7, 2017, pursuant to the Court's Electronic Filing System, I submitted an electronic version of the following document(s) via file transfer protocol:

## NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) DIVERSITY

True copies of these documents were served electronically upon all counsel of record by the Court's CM/ECF System, or if such service is not authorized, by first class mail, in accordance with Rule 5 of the Federal Rules of Civil Procedure.

☒ **BY U.S. MAIL**    I deposited such envelope in the mail at Los Angeles, California. The envelopes were mailed with postage thereon fully prepaid.

Mary E. Lockington, Esq.
mlockington@lockingtonlawgroup.com
**LOCKINGTON LAW GROUP**
400 Oceangate, Suite 700
Long Beach, California 90802
Phone: (562) 435-2925
Fax:  (562) 901-9972
***Attorney for Plaintiffs***

I am readily familiar with Morris Polich & Purdy's practice of collection and processing correspondence for mailing. Under that practice, documents are deposited with the U.S. Postal Service on the same day which is stated in the proof of service, with postage fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date stated in this proof of service.

**CERTIFICATE OF SERVICE**

☒    **FEDERAL** - I declare I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury that the above is true and correct.

Executed at Los Angeles, California, on April 7, 2017.

_____
Maria M. Cervantes

**CERTIFICATE OF SERVICE**